# RICHARDS *v.* MACKALL.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued December 13, 1887. — Decided January 9, 1888.

When a complainant in a bill in equity has been guilty of apparent laches in commencing his suit his bill should set forth the impediments to an earlier prosecution, the cause of his ignorance of his rights, and when the knowledge of them came to him; and if it appears at the hearing that the case is liable to the objection of laches on his part, relief will be refused on that ground.

In this case the court holds that the complainant was guilty of laches, and refuses relief on that ground alone.

THIS case is the one referred to in the last clause of the opinion of this court in *Mackall* v. *Richards*, 112 U. S. 369, 376.

In the year 1859, Brooke Mackall, sen., made a verbal gift to his son, Brooke Mackall, jr., of lot 7, in square 223, in the city of Washington; the father, at the time, promising that he would thereafter make a formal conveyance of the property. The son, relying upon such promise, took possession of the lot and commenced the erection of a building thereon, at the

southwest corner of New York Avenue and 14th Street. The lot was of irregular shape; its line on 14th Street being about 152 feet long, and on New York Avenue about 160 feet.

The marshal of the District of Columbia advertised, in 1869, that in virtue of three writs of *fieri facias* and one writ of *venditioni exponas*, issued from the clerk's office of the Supreme Court of the District, he would, on a named day, sell at public sale, for cash, "all defendant's right, title, claim, and interest in and to part of lot 7, in square 223, in the city of Washington, D. C., beginning at the northeast corner of said square and running thence south 44 feet; thence west to the west end of the lot; thence in a northerly direction with the west line thereof to the north line of said lot; thence with said north line to the place of beginning, together with all and singular the improvements thereon, seized and levied upon as the property of Brooke Mackall, jr., and will be sold to satisfy executions Nos. 3477, 3478, 4117, and 3708, in favor of Matthew G. Emery, George H. Plant, A. & T. F. Richards, and Owen & Wilson."

Before the sale took place, Mackall, jr., brought a suit in equity against said execution creditors and the marshal. He stated in his bill that, although he was equitably entitled to the whole of lot 7, under the before mentioned gift of his father, he had not received a conveyance therefor, and consequently did not hold the legal title. Referring to the description of the property as given in the levies and in the advertisement of sale, he alleged that it was both an indefinite and an impossible description, and that a sale in the mode proposed would prejudice his rights in the remainder of the lot. He therefore prayed that the sale be enjoined. The execution creditors severally answered, each averring that the legal title to the property was in Mackall, jr., in virtue of a sale, in 1862, to one Hyde for taxes assessed upon it by the corporation of Washington, and that Mackall, jr., as assignee of the purchaser, had received and then held a tax deed for the lot, dated October 6, 1865.

It does not appear from the record that any motion for an injunction was made, or that an injunction was issued, or that

any further steps were taken, in that cause, beyond the filing of the bill and answer. The sale under the before mentioned executions, levies, and advertisement, occurred June 13, 1870. The present appellant became the purchaser at the sum of $2500, all of which, except $646.89, was required to pay judgments prior in time to that recovered by A. & T. F. Richards. On the 7th of October, 1870, he received a deed containing the following description of the property conveyed: "Part of lot 7 in square 223, beginning at the northeast corner of square and running thence south 44 feet; thence *westerly* to the west end of the lot; thence in a northerly direction with the west line thereof to the north line of said lot; thence with said north line to the beginning." This deed was duly recorded February 3, 1871. Richards took possession under his purchase, and expended large sums upon the property in order to make it available.

On the 2d of April, 1873, Brooke Mackall, sen., (his wife uniting and relinquishing her contingent right of dower,) made a conveyance of lot 7, in square 223, to Joseph B. Hill in trust, to permit the grantor to hold, occupy, and enjoy the premises, with the rents, issues, and profits thereof, and to convey them to such persons, and upon such terms, as the grantor might in writing direct, and with authority in the latter to encumber the premises or any part thereof as he or his heirs and assigns might direct. This deed was recorded September 29, 1873. When it was made, Mackall, sen., knew that his son held the tax deed of 1865; indeed, the tax deed was made to the son by the direction or procurement of the father.

On the 30th of January, 1874, by a deed, in which Brooke Mackall, sen., and Joseph B. Hill, individually and as trustee, united as grantors, lot 7, with all the buildings and improvements thereon, and all the rights appertaining thereto, was conveyed to Leonard Mackall, in trust, to hold the same for the use and benefit of Brooke Mackall, sen., "and subject to his absolute control and disposal, and to sell and dispose of the same as the said Brooke Mackall, sen., may in writing direct and require." This deed, for some reason, was not recorded until June 3, 1878.

By deed of February 27, 1880, Brooke Mackall, sen., con-veyed the same lot, including his interest in a pending claim for mesne profits against Alfred Richards, together with all the buildings and improvements thereon, and with all rights in law or in equity appertaining thereto, to Brooke Mackall, jr., his heirs and assigns forever, for their sole use and benefit. Mackall, sen., died March 7, 1880.

The present suit was brought by Brooke Mackall, jr., on the 11th day of April, 1882, — nearly twelve years after Richards' purchase, — for the purpose of having the sale of June 13, 1870, the conveyance of October 7, 1870, and all transfers de-pending thereon, adjudged to be void and of no effect. The sale and conveyance are attacked as invalid upon the follow-ing grounds: The price paid for it was grossly inadequate; the executions on which the sale was made were issued with-out authority, other previous executions not having been re-turned; the judgments on which the executions were issued were personal judgments only, while the executions directed the sale of specific property described therein; the executions did not sufficiently describe the nature of the debtor's interest in the property, whether legal, equitable or otherwise, nor de-fine its boundaries, so that it could be identified, nor conform to the description of the property as given in the declarations; the court in two of the cases was without jurisdiction to render any other than personal judgments, the proper tribunal for the enforcement of mechanics' liens being a court of equity; that Brooke Mackall, sen., held the legal title to the property, and was not a party to any of the said suits; that a sale of an equitable interest in real estate could not be made at law, whether for the enforcement of a mechanic's lien or otherwise; that at the time of the sale, Mackall, jr., had no in-terest in the property except that arising from a verbal prom-ise to convey and his action thereon; that the alleged levies and sale were made long after the return day of the writs; that the executions were issued and delivered to D. S. Gooding, who was then the marshal of the District of Columbia, whereas the advertisement, sale and conveyance purport to have been made by Alexander Sharp, who was marshal at the time of

sale; that the advertisement of sale does not sufficiently describe the property, nor the nature of the interest to be sold, or agree with the other proceedings; and that the conveyance by the marshal does not conform to any of the proceedings in said causes.

The court below, in special term, dismissed the bill. But that decree was reversed in general term, the sale and conveyance by the marshal to Richards, and all transfers depending thereon, being set aside as void and of no effect. As between the parties to the suit, the appellee was declared to be the owner of the property, with a right to have the legal title conveyed to him, upon his paying appellant's claim as judgment creditor, as well as his disbursements in connection with said premises. The ground upon which the court below, in general term, proceeded, was, that "on account of the patent, and palpable ambiguity and uncertainty in the description of the property, both in the advertisement and in the marshal's deed," the sale could not be sustained. *Mackall* v. *Richards*, 3 Mackey, 271.

*Mr. Enoch Totten* for appellant. *Mr. William B. Webb* was with him on the brief.

*Mr. W. Willoughby* for appellee.

Mr. Justice HARLAN, after stating the facts as above reported, delivered the opinion of the court.

Is appellee entitled to relief in a court of equity in respect to the sale of June 13, 1870? In *Badger* v. *Badger*, 2 Wall. 87, 95, it was said that a party who makes an appeal to the conscience of the chancellor should "set forth in his bill specifically what were the impediments to an earlier prosecution of his claim; how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance; and how and when he first came to a knowledge of the matters alleged in his bill; otherwise, the chancellor may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations in his answer." So

in *Sullivan* v. *Portland, &c., Railroad Co.*, 94 U. S. 806, 811:
"To let in the defence that the claim is stale, and that the
bill cannot, therefore, be supported, it is not necessary that a
foundation be laid by any averment in the answer of defend-
ants.   If the case, as it appears at the hearing, is liable to the
objection by reason of the laches of the complainants, the
court will, upon that ground, be passive and refuse relief."
In the latter case, it was said that equity would sometimes
refuse relief where a shorter time than that prescribed by the
statute had elapsed without suit.   See also *Hume* v. *Beal*, 17
Wall. 336; *Marsh* v. *Whitmore*, 21 Wall. 178, 184, 185; *Hay-
ward* v. *National Bank*, 96 U. S. 611, 617; *Speidel* v. *Henrici*,
120 U. S. 377, 387.

These principles, applied to the present case, lead to a rever-
sal, upon the ground that the appellee, upon his own showing,
has been guilty of gross laches in applying for relief.   When
the sale to Richards was made the appellee had in his posses-
sion a tax deed to himself conveying the legal title to the
whole of lot 7.   While he says he was advised by counsel
that that deed was of no value, and for that reason he did not
put it upon record, he fails to suggest in his pleadings any
reason why it was not sufficient to invest him with the legal
title to the premises.   The evidence fairly justifies the conclu-
sion that he was induced, by reason of his embarrassed finan-
cial condition, to keep it from record in order thereby to
confuse the title to the property, and increase the difficulties
in the way of creditors reaching it for his debts.   Be that as
it may, and assuming that the tax deed was invalid, the ap-
pellee having gone into possession of lot 7, and improved it,
with the consent of his father, and under the latter's promise
to convey it to him, he was entitled, at any time after the sale
to Richards, to raise the identical questions now presented, as
to the invalidity of the sale and conveyance.   He made, as we
have seen, an effort, before the sale, to have it stopped; but
he did not prosecute the suit brought for that purpose; and
after the sale, so far as the record shows, he took no legal
steps whatever to prevent a conveyance being made to the
purchaser or to have the sale set aside.   It is true he alleges

that he complained to Richards of the injustice done by the sale, and endeavored to procure a compromise with him; that the latter repeatedly promised to do what was right, and to release his claim on the property when he was reimbursed by rents and profits for the money he had expended; that Richards promised to render an account of his claim, but no account was ever rendered, except one so extravagant that it could not be considered; and that he has never been able to effect any arrangement with him. The evidence does not sustain these allegations. Appellee testifies that in August, 1873, his father tendered to Richards the amount of his judgment, together with all the expenses and costs of all kinds. But he admits that the appellant declined to accept the money. While appellant was, perhaps, willing to surrender his purchase, shortly after it was made, if he had been reimbursed his expenditures in connection with the property, there is no satisfactory proof that he ever recognized the legal or equitable right of the appellee or of any one else to deprive him of the full benefit of that purchase. We find nothing whatever in the record to excuse the failure of the appellee to institute legal proceedings, in due time, to have the sale set aside. He knew that the appellant relied upon the sale, and upon the faith of it expended large sums. He knew that the premises here in dispute were in fact levied on for his debts, and were intended to be sold in satisfaction of those debts. But after the property has largely increased in value, and after sleeping upon his rights for nearly twelve years, with information, during the whole of that period, of every fact now relied upon by him, appellee asks the aid of a court of equity to set aside the sale and conveyance, and adjudge him to be the owner of the property; and chiefly, because of a mistake of the officer in not so describing the premises in the advertisement of sale and in the conveyance, as to properly identify them. In our judgment, he is not in a position to claim the interference of a court of equity. For that reason alone, the judgment must be

*Reversed and the cause remanded, with direction to dismiss the bill.*