CAULK v. PACE et al.

(Circuit Court of Appeals, Fifth Circuit. January 9, 1893.)

No. 55.

1. EQUITABLE ESTOPPEL—CLAIM OF TITLE TO LANDS.
   In 1844 one S. settled upon a tract of land in Florida, cleared and fenced a portion thereof, set out several acres of orange trees, built a house, and resided in it until his death, in 1857, leaving a widow, and one child by her, and several children by a former wife. The latter children continued to reside upon the land, improving and cultivating the same. The widow and her child went to live with her father, who, in 1857, purchased the land from the state at $1.25 an acre, and took a patent in his own name; but he never took or claimed possession of the land, and in fact disclaimed any interest adverse to the children, except for reimbursement of the purchase price. He died in 1861, and his executors, who continued to exercise their functions until 1883, never made any claim to the lands, but, on the contrary, one of them, as an heir of the testator, executed a deed to the children for a nominal consideration, reciting therein that the legal title was taken by his testator merely in trust for the heirs of S. S.'s widow never claimed any interest in the land as heir of her father, but recognized the title of S.'s children by signing a receipt as guardian for her daughter, as one of the heirs of S., for her distributive share of the proceeds of an orange crop. Afterwards the widow married again, and her son by that marriage brought suit in 1889, after her death, to recover an interest in the land as her heir. S.'s children had always held possession, claiming title against all the world, and in the mean time one of them had bought out the interests of the others, had greatly improved the property, and its value had increased many fold. *Held* that, on this state of facts, the heirs of the maternal grandfather, and particularly the plaintiff, as heir of S.'s widow, were equitably estopped from claiming any interest in the land.

2. LIMITATION OF ACTIONS—RUNNING OF STATUTE.
   The 20-years statute of limitations in force in Florida prior to the war began to run against the maternal grandfather before his death, and against his daughter, the widow, until December 13, 1861, when, by an act of the legislature, the running of the statute was suspended. On February 27, 1872, a new statute was enacted, which required actions for the recovery of lands to be brought within 7 years, as against adverse possessors under claim of title, and provided that all actions not theretofore

barred, or that would be barred within 60 days from the passage thereof, should not be affected by the limitations of the act until 6 months from its approval. *Held*, that this statute was a complete defense, at least as to so much of the land as was actually under inclosure and cultivation prior to the stay law of 1861.

Appeal from the Circuit Court of the United States for the Northern District of Florida.

In Equity. Bill by William H. Caulk against Ella A. Pace and others to recover an interest in lands. In the circuit court the bill was dismissed. Complainant appeals. Affirmed.

Richard H. Liggett, (John E. Hartridge, on the brief,) for appellant. E. K. Foster, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge. On the 27th of February, 1889, the complainant, William H. Caulk, alleging himself a citizen of Kentucky, filed his bill in the circuit court against Ella A. Pace and James E. Pace, her husband, and Mary C. Doyle and Arthur Speer, who are residents of Orange county, in the state of Florida, and citizens of the state of Florida, and Addie T. Farrar, and George Farrar, who are residents of the state of Texas, and the First National Bank of Sanford, a corporation doing business in the town of Sanford, state of Florida, and the Lyman Bank, a corporation doing business in the town of Sanford, state of Florida, and a citizen of said state, therein asserting title as one of the heirs of his mother, Julia A. Caulk, to an undivided one tenth of lot No. 1, section 31, township 19 S. of range 31 E., Orange county, state of Florida, deraigning title under the will of Isaiah D. Hart, who acquired the title by patent from the state. The bill shows that the defendant Ella A. Pace and her husband are in possession of the property; that for various years since 1885 the same has netted, from the sale of fruit, large revenues; that Ella A. Pace and her husband have mortgaged the grove to the Lyman Bank of Sanford to secure a loan of $17,479.95 for the term of one year; that the First National Bank of Sanford is the successor of the Lyman Bank, and is the holder of the said mortgage; that the said Ella A. Pace and her husband have been guilty of improvidence and mismanagement in mortgaging the same; that the complainant fears the First National Bank, unless restrained, will foreclose the said mortgage, which will result in loss to the complainant, and involve him in costly and troublesome lawsuits; and that the defendants John E. and Ella A. Pace, with the exception of the property in question, are totally insolvent, and unable to respond in damages. The prayer of the bill is that an account may be taken of what is due the complainant, a receiver be appointed pending the litigation, an injunction issue restraining the First National Bank of Sanford from foreclosing or attempting to foreclose the said mortgage; and that, on a final hearing of the case, the court will order a partition. On the hearing for the appointment of a receiver and for an injunction, John E. Pace, husband of Ella A. Pace, for himself and his wife, filed a sworn answer, alleging that at the time Isaiah D. Hart pur-

chased the land in question it was in the possession of the family of Dr. Algernon S. Speer, then deceased; that prior to the decease of the said Speer the property had been in the possession of said Speer, and improved by him, and an orange grove planted; that the second wife of the said Algernon S. Speer was a daughter of the said Isaiah D. Hart; and that the said Hart did, at the time he entered the same, state that he entered it in order that the property might be preserved to the children of said Speer; and that Mrs. Ella A. Pace had purchased the interest of the other heirs of Speer, and owned the entire property.

Said answer further alleges that the defendants for the last 10 years have fertilized the grove at a large expense each year, applying for the last 6 years the Forrester fertilizer, the most expensive of any, and said to be the best adapted to improving orange trees and fruit, paying at the rate of $50 an acre for each of the said years; and, from information and belief, that at the time Isaiah D. Hart entered the land Dr. Speer had possession of the same under a receipt given him under a pre-emption in or about 1845, being assured that when the land was confirmed to the state it would be given to him; and that for several years prior to and after his death, in 1857, up to the present time, the property has been in the peaceable and undisturbed possession of the heirs of the said Speer, and never at any time in the possession of Isaiah D. Hart or his executors. The defendants Pace and wife reserve the right to file further answer within the delays allowed by law. Thereafter the defendants John E. Pace and Ella A. Pace, his wife, and John E. Pace, as administrator of Michael Doyle, deceased, filed a sworn answer to the bill, in which they say:

"That the said William H. Caulk is not a cotenant with the defendants, nor has he any interest whatever in the lands described in the bill, and the defendants positively assert that he nor his ancestors were never in possession of said lands, but, on the contrary, the land has been in possession of the defendants and their ancestors since 1844 or 1845, adversely to any interest of any one but themselves. They admit that the said Isaiah D. Hart purchased from the state the land described, but aver that, if he purchased the same, they are informed and believe, upon said information, that he purchased it to hold in trust for the heirs of A. S. Speer, Sr., and he never went into possession, nor exercised any rights of possession, during his life; nor did his executors, or any one claiming under him, go into possession of or exercise any acts of possession; and, denying absolutely and unqualifiedly that the complainant has any interest whatever in the land sought by him to be divided, they pray that the bill may be dismissed, with their cost and charges in that behalf most wrongfully sustained."

To this answer the complainant filed a replication. On these pleadings, none of the other defendants named in the bill having appeared or answered, the case was heard in the circuit court, and on the hearing the court entered a decree dismissing the bill, from which decree the complainant has appealed to this court, assigning as error that the circuit court erred in entering the decree dismissing the bill of complaint.

The case made by the evidence is substantially as follows: In 1844 Dr. Algernon S. Speer settled in Orange county, Fla., lot No. 1, section 31, township 19 S. of range 31 E., containing 73.88 acres. This land was then in a state of transition from the United States

to the state of Florida. · There is some evidence which tends to show that Dr. Speer had taken such steps as he could, considering the condition of the land, to pre-empt the same according to law. Be this as it may, he cleared the land, set out some six or seven acres in orange trees, fenced a portion of it, built a house on the property, and occupied that house with his family as a residence. Dr. Speer was married twice. By his first wife—a daughter of Arthur Ginn— he had four children, i. e. Arthur, Algernon, Mary, and Ella. His second wife was Julia Hart, daughter of Isaiah D. Hart, by whom he had one child, Lula. After living on the land in question· for nearly 12 years, Dr. Speer was drowned in the St. John river, on the 2d of September, 1857, leaving a widow, Julia, and the five named children. After Speer's death, the children by his first wife continued to live on the place with their grandfather, Arthur Ginn; and one of them, Ella, has lived on the place, and been in possession of the same, up to the bringing of the suit in this case, having purchased the rights of the other Speer children. At the death of Dr. Speer, his widow, Julia, with her daughter, Lula, went to live with her father, Isaiah D. Hart, and continued to live with him up to his death, which occurred September 4, 1861. On the 9th day of December, 1857, Isaiah D. Hart purchased from the state, at the rate of $1.25 an acre, the said 73.88 acres, and on the 27th January following took title in his own name under regular patent from the state. During his life he never took nor claimed possession of the land. The evidence tends strongly to show that he acquired and took title to the same for the benefit of the heirs of Dr. Speer, claiming no right nor interest therein for himself, save the return of the amounts advanced ·as purchase money and for taxes. This appears by the testimony of witnesses reciting the conversations of Mr. Hart in relation thereto, by the recitals in the quitclaim deed made by one of the executors and heirs, and particularly by his conduct in the premises. On the 27th of January, 1859, he wrote the following letter to Arthur Ginn, the grandfather of the first four of Dr. Speer's children, then residing with them on the land in question:

"Jacksonville, January 27, 1859.

"Arthur Ginn, Esq.—Dear Sir: I write you now more to get your views and opinions than anything else, as I· do not wish to do anything in the matter of Doctor Speer's estate or affairs without consulting you. Therefore, as I understand, at present it is as follows:

| | |
|---|---|
| Account of sales of Dr. Speer's estate | $436 00 |
| Cash in my hands of Dr. Speer's estate | 350 00 |
| Total | $786 00 |

"Now, if this is all the estate is worth, it will all be consumed in the payment of debts, and will be a mere scrap in comparison to what the estate owes, and the children will not get one cent of it; and if it would pay all the debts I would not say a word; and it will be no disadvantage to the children for Julia to claim her dower of them; and, as the law gives the wife one third, exclusive of debts, it would stand about as follows: Her third would be about two hundred and sixty; the amount I paid for the land, about eighty or ninety; taxes which I have paid, about twenty; making about three hundred and seventy or eighty dollars. Now, if this proposition was any disadvantage to the children, I would not make the proposition, but it can't be any. Will you do me the favor to give me your views in the matter, and, if the

estate is worth more or less, as the case may be, let me know that, too. Julia and the babe are in excellent health. Respects to Mrs. G. and the children.

"Respectfully, your obedient servant, I. D. Hart."

This letter shows he not only made no claim to the land in question, and disavowed any intention to do anything to the disavantage of the children, but admitted that he had in his hands $350 belonging to Dr. Speer's estate. Julia Hart, the widow of Dr. Speer, on April 7, 1863, married William Caulk, by whom she had one son, William H. Caulk, the complainant in this case. She died March 17, 1871. During her life she made no claim whatever, as heir of her father or otherwise, of any right or title to any of the land in controversy; on the contrary, she recognized her daughter, Lula Speer, issue of her marriage with Dr. Speer and one of the five heirs of Dr. Speer, as the owner of a distributive share in the lands in question; all of which clearly appears by the following receipt given by her in July, 1869:

"Received, 26th of July, 1869, from Arthur Ginn, three hundred and seventy-eight dollars, it being the distributive share of the orange crop at Fort Reid, Orange county, Florida, due Lula Speer, minor, said crop having been sold to Messrs. Doyle & Brantley in December, 1868. Julia A. Caulk."

It further appears that the executors under the will of Isaiah D. Hart, who continued to exercise the functions of executors for many years, from 1861 to 1883, never made any claim for possession of the said lands, or any pretense of title thereto, on the part of the estate of Isaiah D. Hart; but, on the contrary, Ossian B. Hart, one of the executors, and one of the heirs of Isaiah D. Hart, in his deed to the heirs of Speer, executed and delivered for a nominal consideration on the 14th of June, 1872, declared that the title and ownership of the said lands were in the heirs of Dr. Speer, and that any legal title to said lands granted to or held by Isaiah D. Hart was accepted and held by him as trustee for the heirs of Dr. Speer. From the death of Dr. Speer, in 1857, to the 27th of February, 1889, when the complainant, William H. Caulk, instituted this suit, the heirs and assigns of Dr. Speer have been in undisturbed, peaceable possession of the said land, occupying it exclusively as their own, receiving the rents and profits, and possessing the same adversely to all the world; and during this time—particularly since 1878—have cleared and fenced the same as far as practicable, planting some 30 additional acres in orange trees, cultivating and improving the whole by the expenditure of large sums of money for labor and commercial fertilizers; so that the insignificant property of 1857 has become one of the largest and most valuable orange groves in the state.

On the foregoing evidence the complainant's bill was properly dismissed.

1. Considering the lapse of time, the conduct of Hart, his heirs and executors, and the continued possession and occupation of the Speer heirs in their own right, the evidence sufficiently establishes that Isaiah D. Hart acquired and held the legal title to the land in controversy as a naked trustee for the Speer heirs; and Hart's heirs are equitably estopped from claiming more. As to the heirs of Julia A. Caulk, there seems to be a clear, equitable estoppel, as she collected

money from the Speer heirs in the right of her daughter, Lula Speer, as one of the joint owners with the other Speer heirs.

2. At the time Isaiah D. Hart acquired the legal title, the statutes of the state of Florida required that an action for the recovery of real property should be brought within 20 years after such cause of action accrued. Thomp. Dig. 441. This statute began to run against Isaiah D. Hart in his lifetime, and on his death continued to run against his executors, (see Sanchez v. Hart, 17 Fla. 507; Doyle v. Wade, 23 Fla. 90, 1 South. Rep. 516,) and against Julia A. Caulk, then Julia A. Speer, a feme sole, under whom the complainant claims, until December 13, 1861, when the legislature enacted a stay law suspending the statutes of limitation. February 27, 1872, the legislature of the state of Florida re-enacted a statute of limitations for civil actions, now in force, which requires the action for the recovery of real property to be brought within seven years, as against an adverse possessor under claim of title. Laws Fla. (Acts 1872, p. 20.) Under the nineteenth section of the last-mentioned act, which reads as follows, "All actions not heretofore barred by statute, or that will be barred within sixty days from the passage hereof, shall not be affected by the limitations of this act until six months from the date of the approval hereof," a strong argument can be made showing that complainant's action was barred at the end of six months from the 27th of February, 1872, to wit, on August 27, 1872. See Spencer v. McBride, 14 Fla. 403; Wade v. Doyle, 17 Fla. 522; Doyle v. Wade, 23 Fla. 90, 1 South. Rep. 516.

As to the portion of the land in question actually under inclosure and cultivated and improved prior to the stay law of 1861, the statute of limitations of 1872 is a complete defense, as the statute had commenced to run against Isaiah D. Hart in his lifetime. The difficulty in applying the statute as a complete legal defense to the whole case arises from the fact that not more than six acres were cultivated, improved, or fenced until after the death of Julia A. Caulk, and then during the minority of the complainant. But, as we view the case, we do not care to determine whether the statute of limitations constitutes a complete legal defense to the action, because, in equity, the complainant's demand is stale, and therefore ought not to be sustained. Staleness of demand need not be pleaded. Sullivan v. Railroad Co., 94 U. S. 806–811; Richards v. Mackall, 124 U. S. 183–188, 8 Sup. Ct. Rep. 437. In Badger v. Badger, 2 Wall. 87–94, Mr. Justice Grier, in delivering the opinion of the supreme court, after reviewing the authorities and considering the principles upon which courts of equity act in cases of laches and stale demands, says:

"Courts of equity, in cases of concurrent jurisdiction, consider themselves bound by the statutes of limitation, which govern courts of law in like cases, and this rather in obedience to the statutes than by analogy. In many other cases they act upon the analogy of the like limitation at law. But there is a defense peculiar to courts of equity, founded on lapse of time and the staleness of the claim, where no statute of limitation governs the case. In such cases, courts of equity act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, refuse to interfere where there has been gross laches in prosecuting the claim or long acquiescence in the assertion of adverse rights. Long acquiescence and laches by parties out of possession are productive of much hardship and injustice to

others, and cannot be excused but by showing some actual hindrance or impediment, caused by the fraud or concealment of the parties in possession, which will appeal to the conscience of the chancellor."

The case of Badger v. Badger has been cited by the supreme court of the United States with approval in many cases, and has been directly affirmed, as to the part of the decision quoted, in the following cases: Sullivan v. Railroad Co., supra; Lansdale v. Smith, 106 U. S. 392, 1 Sup. Ct. Rep. 350; Speidel v. Henrici, 120 U. S. 387, 7 Sup. Ct. Rep. 610; and Richards v. Mackall, supra. The authorities cited by the counsel for appellant on the doctrine of permissive possession are not applicable to this case, as there can be no doubt that the Speer heirs held, occupied, cultivated, and improved the land in controversy as their own, and under their own right. The decree dismissing the bill should be affirmed, with costs, and it is so ordered.