# MACKALL v. MITCHELL.

---

### EJECTMENT; COLOR OF TITLE; POSSESSORY TITLE.

1. Where the defendant in ejectment relies not only upon a good record title, but also upon a possessory title, a marshal's deed and tax deeds to one under whom he claims, are admissible in evidence as constituting color of title, whether they are void or not.

2. A small triangular parcel of land left for access to the main door of a building, and necessary for such access, is to be regarded, in contemplation of law, as covered by the building, and twenty years' adverse possession of the building and use of the parcel of land as a means of access thereto, will be sufficient to give a good possessory title to such parcel, especially where the plaintiff in ejectment seeking to recover such parcel of land, planned and erected the building and made the triangle the only place of access to the principal, if not only, door of the building opening on the street.

No. 1085. Submitted February 14, 1901. Decided March 7, 1901.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia upon the verdict of a jury directed by the court in an action of eject-ment.                                        *Affirmed.*

The COURT in its opinion stated the case as follows:

This is a suit in ejectment instituted by the appellant, Brooke Mackall, as plaintiff, in the Supreme Court of the District to recover the possession of a small triangular piece of land in the city of Washington at the southwest corner of Fourteenth street and New York avenue, constituting the acute angle of Lot No. 7, in Square 223, and containing less than fifty square feet of ground. This piece of land was not built upon on account of its angularity when the building was constructed on the lot which occupied it at the time this suit was instituted, and had occupied it for about twenty-five years before that time, the main entrance of which opened upon it. The piece in question was ap-parently a part of the sidewalk in front of the building, and over it and upon it ingress to the building and egress there-from were had, and it was the principal place of ingress and egress.

At the trial of the issue between the parties as to the ownership of the land, the plaintiff proved what seems to be conceded to be a complete record title in himself to the whole of Lot 7, in Square 223, omitting all the subsequent proceedings under which the defendant claimed; and he fur-ther proved that on June 1, 1896, the defendant was in possession as tenant of the premises under a lease to him from the heirs or representatives of one Alfred Richards. It is assumed that this possession continued at the time of the institution of the suit, January 29, 1897, although there is no proof of the fact in the record now before us.

The plaintiff seems to have been in possession of Lot 7 in the year 1864, for in that year he commenced to erect a building on it; and it is claimed on behalf of the defendant, William Ray Mitchell, that he even then held an unrecorded

conveyance of it to himself in fee-simple, although the title now exhibited by him finds its record completion in the year 1880 by a deed from his father, who was the previous record owner.

On behalf of the defendant the title given in evidence was that of Alfred Richards, who has been mentioned; and the contest between the parties is, in fact, as to the validity of that title.　Indeed, this suit is only the last of a long series of suits between Mackall and Richards extending from the year 1870 down to the present time, all involving the question of the ownership of parts or of the whole of this Lot 7, of which, as we have stated, only a very small fragment is in controversy in this suit.

The litigation appears to have begun with the filing of mechanics' liens by Alfred Richards and others against the property for materials furnished by them for the construction of the building stated to have been commenced thereon by Mackall in 1864.　Three suits at law resulted, it appearing to have been the practice at that time to enforce such liens by suits at law instead of bill in equity, and judgments therein were had against Mackall, upon which writs of execution were issued and placed in the hands of the marshal. The evidence on the part of the defendant began with the offer of the records of these several suits, to which there was no objection.

The marshal advertised and sold under the writs, and executed a deed of conveyance to Alfred Richards, the purchaser.　But what he advertised, or what he sold, or what he conveyed, appears never to have been definitely ascertained; and it is this indefiniteness which gave rise to all the subsequent litigation.　The deed purported to convey "that part of lot numbered seven, in square numbered two hundred and twenty-three, beginning for the same at the northeast corner of said square, and running thence south forty-four feet, thence westerly to the west end of said lot, thence in a northerly direction with the west line thereof to the northern line of said lot, thence with said northern line to the place of beginning."　Lot 7 is an irregular lot,

as is apparent from a diagram of it hereto annexed; and
while the first line or course of the foregoing description is
determinate enough, the other courses are wholly indefinite
and in fact impossible.  For a line running due west from
the end of the first line, which, in the absence of any angle,
is the only way in which we can properly run a *westerly*
line, cannot reach the west end of the lot, but will necessarily
strike the northern, or rather the northwestern line, and
render the third course of the description impossible.  In
the course of the litigation which followed, Richards claimed
that this second line was a line running southwest parallel
to the line of New York avenue, which was the fourth course
of the description; but it was held that this was not justified
by any record in the case.

CKL—Is the small triangle in controversy.
CDHB—Lines of building including triangle.
LDHBK—Actual lines of building.
CD—First course of marshal's deed—44 feet.
DI—Line drawn due west from end of first course.
DG—Line claimed by Richards.

This deed from the marshal was offered in evidence and
was admitted over the objection of the plaintiff, and there
was exception reserved.  It appears that Richards entered
and took possession of the building under it in 1870 or 1871,
and thereupon completed the building substantially in ac-
cordance with the plans of Mackall, whereby the entrance
was on and over the little triangle now in controversy; and

he and his representatives have continued to hold to the present time.

Next there were offered in evidence for the defense, merely to show color of title in Richards, two tax deeds from the District of Columbia to Alfred Richards and T. A. Richards, whereby, on account of default in the payment of taxes due to the District for the year 1872 and for several years prior thereto, the District of Columbia conveyed the whole of Lot 7 to the grantees. These tax deeds were followed by a deed of his interest thereunder executed by T. A. Richards to Alfred Richards. The tax deeds were executed in 1874, and promptly recorded. Exception was reserved by the plaintiff to the admission of all three of these deeds, on the ground that they were absolutely void, there being, as claimed, no preliminary evidence to show that the prerequisites of the law as to publication, notice, etc., had been complied with.

Next there was offered and admitted without objection a quitclaim deed from Alfred Richards to Brooke Mackall, under date of November 30, 1887, apparently during a temporary lull in the litigation, whereby the former released to the latter all of Lot 7, except that portion upon which the building stood, which was then known as the Palace market, and except, also, that triangular piece now in controversy. The purpose of this deed was to enable Mackall to effect a loan upon the property.

The next piece of evidence was the record of two subdivisions made by Richards of part of Lot 7, one on November 26, 1877, designated by him as Lot 12, which appears on the foregoing diagram as contained between the lines A C D A, and the other on March 12, 1888, designated by him as Lot 13, which appears on the diagram as contained within the lines B C D H B. Both of these subdivision lots contained and included the triangle now in controversy.

There were then introduced the records of various suits in equity and at common law previously had between the parties and wherein this Lot 7 was involved. These suits in their chronological order are as follows:

(1) Equity cause No. 2373 on the docket of the Supreme Court of the District of Columbia, instituted by Richards against Mackall and others, which was a judgment creditor's bill to sell all of Lot 7, except the part covered by the marshal's deed, and specifically stated to be the part south of the line DG on the diagram, in order to satisfy the residue of the judgments obtained by Richards and others in connection with their mechanics' liens and which had not been satisfied by the marshal's sale. Mackall, in his answer, denied that he had any ownership in the premises; and in the course of the proceedings he testified as a witness that Richards had used the triangle now in controversy with the building ever since his purchase from the marshal in 1870, and had claimed the whole of Lot 12, which included this triangle, as already stated.

The Special Term of the Supreme Court of the District adjudged, on May 1, 1873, that the present appellant was the owner of the property, and decreed a sale in accordance with the prayer of the bill; and this decree was affirmed by the General Term and by the Supreme Court of the United States on appeal. See *Mackall* v. *Richards,* 116 U. S. 46. The cause was thereupon remanded for the execution of the decree by the Supreme Court of the District. Under this decree a sale was made and reported, to which Mackall filed exceptions on the ground that the property sold had not been sufficiently described. The exceptions were sustained, and the sale was vacated. Steps were then taken by the equity court to fix the boundaries of the property, and on December 11, 1879, a decree was entered at the Special Term directing sale of the part of Lot 7 south of the line DG, without any determination of the lines of the marshal's sale. This was affirmed by the General Term; but on appeal to the Supreme Court of the United States, that tribunal reversed the decree of the lower court, and remanded the cause, " with directions to the court below to set aside the decree from which this appeal is prosecuted, and to order the sale, in satisfaction of the complainant's demands, and in such mode as may be consistent with the practice of the

court and with law, of Lot 7 outside of the part upon which the building known as the Palace market stands." 112 U. S. 369, 377.

The Supreme Court of the District thereupon entered a decree directing a sale of all of Lot 7 outside of the part on which the Palace market stood, following the language of the mandate of the Supreme Court of the United States. But the cause was satisfied, and, consequently, no sale was ever had.

It may be stated that the original bill of complaint in this case perpetuated and brought into the cause the indefiniteness of the marshal's deed, by praying for the sale of all of Lot 7 which remained " after taking or carving out therefrom the aforesaid piece or part thereof so as aforesaid taken, sold, and conveyed by the marshal of the District of Columbia to Alfred Richards," etc.; and, consequently, it became necessary in that suit to determine the limits of the marshal's deed. Upon that question the Supreme Court of the United States expressed the opinion " that the record fails to show that any part of Lot 7, outside of the piece upon which the building at the northeast corner of the lot stands, was sold or conveyed by the marshal to Richards." 112 U. S. 376.

(2) Equity cause No. 8118 on the docket of the Supreme Court of the District, instituted on April 11, 1882, by Mackall against Richards for the purpose of vacating the marshal's sale of June 13, 1870, the deed thereunder of October 7, 1870, and all the subsequent conveyances dependent thereon, and for an account of rents and profits. This bill was dismissed by the Special Term; but the General Term reversed the decree, and held the marshal's sale and the deed thereunder void on account of the uncertainty in the description of the property. 3 Mackey, 271. The Supreme Court of the United States, upon appeal by Richards, reversed the decree of the General Term, held that Mackall was guilty of gross *laches* in the prosecution of his suit, and remanded the cause with directions to dismiss the bill. 124 U. S. 183. The bill was accordingly dismissed.

(3) Equity cause No. 9782 on the docket of the Supreme Court of the District, instituted on January 20, 1886, by Mackall against Richards, to have the part of Lot 7 in the possession of Richards sold with the remainder of the property under the decree in Equity cause No. 2373, already mentioned. This bill was dismissed in the Special Term, and no further proceedings thereon were had.

(4) Cause No. 29286 at law on the docket of the Supreme Court of the District on January 10, 1889, by Mackall against Richards, for the recovery of a portion of the taxes paid by Mackall on the whole lot for the years 1878, 1879, 1880, 1881, 1882, 1883, 1884, second half of 1885, 1886, and 1887, in which suit it was alleged that Richards was in possession of the building. It does not appear from the record before us what the result was of this suit, nor is it important.

It was agreed by the parties in this connection that the taxes on Sublot 12, which has been mentioned, for the years from 1878 to 1884, both inclusive, and for the first half of the year 1885, had been paid by Richards, and also all the taxes assessed against the Sublot 13; and that the taxes for the whole of Lot 7 for the years 1873 to 1877, both included, second half of 1885, 1886, and 1887, had been paid by Mackall, on November 30, 1887.

Alfred Richards having died before the institution of the present suit, his will was then offered in evidence on behalf of the defendant. It devised the property in controversy as part of his general estate to trustees, who leased to the defendant Mitchell.

The testimony was also introduced of various tenants of the property, the substance of whose testimony was to show continued possession and occupation of the property by them as tenants of Richards or of his estate from May of 1876 to the time of the institution of the suit (January 29, 1897).

After some testimony in rebuttal not deemed important to be stated here, the plaintiff moved for an instruction to the jury to return a verdict in his favor on the ground that the decision of the Supreme Court of the United States in

5

Equity cause No. 2373, which has been mentioned, was *res judicata,* or an adjudication of his right in the premises, which is conclusive and binding upon the parties, and that there had been no adverse possession of the property since the rendition of that decree of the Supreme Court (November 24, 1884); but this request was refused, and exception was taken. The defendant then requested an instruction to the jury upon the whole cause to return a verdict for the defendant; and the request was granted. To this also the plaintiff excepted.

Verdict was accordingly rendered for the defendant, and judgment entered thereon, from which the plaintiff has prosecuted the present appeal.

*Mr. D. W. Baker* and *Mr. John C. Gittings* for the appellant:

1. It was an error to admit the marshal's deed to Richards in evidence, as said deed is void and on its face conveys nothing, and only becomes intelligent in the light of the opinion of the Supreme Court of the United States in Equity cause 2373 (112 U. S. 369), and it is a matter of no difference whether the appellee offered the deed to prove title, or only for the purpose of showing color of title. The record shows that at the time the marshal's sale took place the legal title to Lot 7 in Square 223 was not in appellant, but in his father, Brooke Mackall, Sr. Therefore, the marshal's deed to Richards is worthless and void.

2. The admitting of the tax deeds into evidence to show color of title was unquestionably error; the authorities are clear in this jurisdiction that a tax title cannot be shown by the offer of a tax deed, without first showing a compliance with all the necessary requisites. *King* v. *District of Columbia,* McArthur & Mackey, 36; *Beale* v. *Brown,* 6 Mackey, 574. And an offer of the deed to prove *color of title* is subject to the same objection, as the deed is void on its face, as it fails to cite that these requirements have been complied with, which are a prerequisite to the officer authorized to give such

a deed. It is the general rule of law that a paper title to give color must *prima facie* appear to be a good title. *Hill* v. *Law,* 102 U. S. 466; *Veal* v. *Robinson,* 70 Ga. 816; *Birnal* v. *Gleim,* 33 Cal. 676; *Jackson* v. *Frost,* 5 Cow. (N. Y.) 351; *Livingston* v. *Peru Iron Co.,* 9 Wend. (N. Y.) 511; *Redfield* v. *Parks,* 132 U. S. 251; *Shoat* v. *Walker,* 6 Kan. 65; *Keef* v. *Bramhall,* 3 Mackey, 551.

3. The court below, in refusing to grant appellant's prayer, based on the theory that the final decree in Equity cause 2373 was *res judicata* in his favor, erred. The general principle that a right, question, or fact, distinctly put in issue, and directly determined by a court of competent jurisdiction, cannot be disputed in a subsequent suit between the same parties or their privies, seems to be well-settled law. *Cummings* v. *Baker,* 16 App. D. C. 1. The right to examine the court's decision to ascertain what questions were actually adjudicated thereby has been repeatedly upheld both by the Supreme Court of the United States and this court. *Cummings* v. *Baker,* Id.; *Phelps* v. *Harris,* 101 U. S. 370. And we contend that from the language of Mr. Justice Harlan in Equity cause 2373 (112 U. S. 377), appellant's title to this triangle, the subject of dispute here, is settled, as the record shows the equity cause was satisfied, and that the trustees, while authorized to sell, never sold the property; therefore, so far as Richards or his privies are concerned, the question is *res judicata,* and the prayer requested of the court below was proper and should have been granted.

4. We have shown that Equity cause 2373 disposed of any right appellees could claim by virtue of the marshal's deed to Richards; and the record is absolutely barren of evidence to support claim of color of title under tax deeds; and (without taking into consideration that the court erred in admitting the tax deeds in evidence), we respectfully submit, what is there in the record upon which the defendant's prayer could have been predicated? Certainly not upon the theory that Equity cause 8118 was *res judicata* against appellant, as the opinion of Mr. Justice Harlan emphatically states, in the decision of the Supreme Court of the United States, that that

cause was dismissed on the sole ground of *laches*. *Richards* v. *Mackall,* 124 U. S. 173.    That a bill in equity, being dismissed on the ground of *laches,* does not adjudicate the merits, is a principle well settled.    2 Pom. Eq., Sec. 817; *Cummings* v. *Baker, supra.*

*Mr. B. F. Leighton* and *Mr. W. C. Prentiss* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

The assignments of error are three in number, and are to the effect: (1) That it was error in the trial court to admit in evidence the marshal's deed and the several tax deeds which have been mentioned; (2) that the jury should have been instructed to render a verdict for the plaintiff; (3) that the jury should not have been instructed to render a verdict for the defendant.    The second and third of these, of course, are the counterparts of each other; and both raise simply the question of the validity of the Richards claim of title to the property in controversy.

1. With reference to the first assignment, we think that there was no error in the action of the trial court in the admission either of the marshal's deed or of the tax deeds in evidence.    It is not correct to say that the marshal's deed is upon its face null and void.    The utmost that could be said of it is that, on account of its defective description of the property sought to be conveyed, it should be regarded as invalid.    But none of the decisions which have been cited go so far as to hold that it is even invalid.    It purports to convey a part of Lot 7, but it fails to define distinctly what part it is.    The grantee, however, went into possession of the building under it; and the tendency of subsequent decision on the subject was plainly to hold that for the building and the part of the lot occupied thereby the conveyance might be regarded as good.    But, whether the conveyance was valid or not, it was clearly admissible as the foundation of a possessory title; and the defendant here relies, not

alone on a good record title, but on a possessory title as well. In the view, however, which we take of this case, it is unimportant whether this deed was properly admitted in evidence.

With regard to the two tax deeds, which were offered in evidence only to show color of title, the objection to them is clearly untenable. Richards was in possession of part of Lot 7 under claim of title. It is conceded that this claim covered the building and the part of the lot actually inclosed within the outer edge of its walls. Whether it included more would depend upon the title that was set up, whether that title was in itself valid or invalid. The tax deeds covered the whole of Lot 7, and consequently the claim of title would be construed to extend to the whole lot, and the occupant would be entitled to constructive possession of the whole lot. When he quitclaimed part of the lot to the appellant, as he did, the constructive possession under the tax deeds would extend to all the remainder; and it might well be that, by the acceptance of such a quitclaim deed under the circumstances, the appellant here should be held as admitting the validity of the adverse claim to the residue of the property, and possibly as estopped from contesting it.

These tax deeds undoubtedly constituted color of title to the occupant in possession of the property and claiming under them. It is objected that they were void. It is a grave mistake so to assume. If offered as links in a good record chain of title, it might have been improper to admit them without proof of the preliminary steps required to give them effect; but it does not necessarily follow that a tax deed should be regarded as void because it is a tax deed. But whether they are void or not is of no consequence here. They are offered simply as giving color of title; and it is a misapprehension of the question involved to argue that they are void. Color of title implies not a valid, but an invalid muniment of title. If the instrument were valid, it would give, not color of title, but a good and valid title. The two things are entirely different.

We must, therefore, regard the first assignment of error as wholly untenable and without foundation.

2. The second and third assignments, as we have said, raise only the one question of the validity of the Richards title. In our opinion these assignments also are without merit.

On behalf of the appellant it is claimed that this question was decided in his favor by the adjudication of the Supreme Court of the United States in the case of *Mackall* v. *Richards,* 112 U. S. 369. On the other hand, on behalf of the appellee, it is claimed that this very same question was decided in favor of the appellee by the same court in the case of *Richards* v. *Mackall,* 124 U. S. 183. And both are argued to operate as estoppels to further litigation. The one decision was had in the suit heretofore designated as Equity cause No. 2373; and the other was had in Equity cause No. 8118. But we do not deem it necessary to determine here whether the adjudication in either case should be deemed to operate as an estoppel. We deem it sufficient to say, and from the record it plainly appears, that from the year 1870 to the time of the institution of this suit in 1897, a period of upwards of twenty-six years, Alfred Richards first, and his tenants and representatives afterwards were and remained in the undisturbed and uninterrupted possession of the building which has been mentioned under the name of the Palace market and of the part of Lot 7 covered by that building; and that this possession was never broken by any of the numerous suits to which reference has been made. Now, under the testimony in this cause and for the purpose of this cause we must regard the triangular pieces of land here in dispute as, in contemplation of law, *covered* by the building mentioned, and as a necessary part of such building. It was so designed by the appellant himself when he planned the building and made this triangle the only place of access to the principal, if not the only, door of the building opening on the street, and the only place of egress therefrom. The use of this triangle is necessary to the use of the building, and never was and is not now proper to be used for any

other purpose.    As well might it be argued that a building, in which a well or open space is left in the center for light and air, does not cover such open space, as that a space, left for access to the main door of the building and which is necessary for such access, is not part of the building, in contemplation of law.    It seems to us that this position is too plain to require either elucidation of argument or citation of authorities.

If the appellant had by a voluntary conveyance transferred to Alfred Richards the part of Lot 7 covered by the building, together with the building thereon, undoubtedly he could not be heard, either at common law or in equity, to deny that his deed comprised the principal, perhaps the only mode of access to the building.    And while in a case, in which the transfer has been made by the processes of law against the appellant's will, it might be proper to indulge for some purposes in less liberality of construction, certainly no such illiberality is to be sanctioned as would destroy or greatly impair the value of the transfer by the denial of the right of access to the property conveyed.

We are of opinion that the trial court did not err in its instruction to the jury to render a verdict for the defendant, and that it would have been error to direct a verdict for the plaintiff.

It follows that the judgment of the Supreme Court of the District of Columbia in the premises should be *affirmed, with costs.    And it is so ordered.*

A motion for a rehearing by the appellant, filed March 21, 1901, was overruled April 12, 1901.