BOWER v. STEIN.

(Circuit Court, D. Oregon. November 16, 1908.)

No. 3,159.

1. MORTGAGES (§ 401*)—FORECLOSURE BY ACTION—RIGHT TO FORECLOSE—STIPU-
   LATION FOR MATURITY OF DEBT ON DEFAULT.
   Under a provision in a mortgage giving the holder the right at his elec-
   tion to declare the debt due and foreclose on default in the payment of
   interest, no formal declaration of such election is required, but the com-
   mencement of a ·foreclosure suit is a sufficient declaration.
   [Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1209; Dec. Dig.
   § 401.*]

2. MORTGAGES (§ 529*)—FORECLOSURE—SUIT TO SET ASIDE SALE—LACHES.
   Complainant executed a mortgage on property to secure a debt in 1896,
   and then removed to another state. No payment of either principal or
   interest was made or tendered until 1907, when complainant filed a bill
   in equity to set aside a foreclosure sale made in 1898, as authorized by
   the terms of the mortgage, and to redeem therefrom, the property having
   in the meantime been conveyed to defendant, who was an innocent pur-
   chaser for value. The bill alleged that it had largely increased in value,
   and that complainant had no knowledge of the foreclosure until 1902, but
   it did not allege that she had made any inquiry in that respect, nor state
   any sufficient excuse for the delay after 1902 in bringing suit. Held, that
   complainant was chargeable with such laches as to bar her right to have
   the sale set aside in equity on the ground of technical defects in the fore-
   closure proceedings or of fraud on the part of the mortgagee in failing to
   give complainant actual notice of the same.
   [Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1542; Dec. Dig.
   § 529.*]

In Equity. On demurrer to bill.

The complainant in this bill seeks to have canceled and set aside a decree
of foreclosure, and a sale thereunder, of lots 2 and 3 in block 250, Couch's ad-
dition to the city of Portland. She also seeks to be allowed to redeem the
property from the lien of the mortgage foreclosed.

It appears from the bill that complainant and her husband, John M. Bower,
on March 20, 1896, mortgaged the property to one Sherman, to secure the
payment of $1,500, which mortgage Sherman subsequently assigned to Cleve-
land Rockwell. Shortly thereafter complainant, who was an artist, removed
with her husband, who was an attorney at law, from this state, and took up
her abode in the city of New York. On the 30th of April, 1898, there had
accumulated, and remained unpaid, interest on the note and mortgage to the
amount of $180, and on that date Rockwell commenced foreclosure proceed-
ings against the complainant, her husband, and Sherman, in the state circuit
court for Multnomah county, Or. Complainant and her husband having be-
come nonresidents, Rockwell filed in said foreclosure suit an affidavit for
service of process upon them by publication, in accordance with the Code of
Civil Procedure in this state. In this affidavit it was stated, inter alia, that
the defendant Lucy Scott Bower, and John M. Bower, her husband, were
nonresidents of this state; that plaintiff had inquired among numerous per-
sons in and about the city of Portland, friends of said defendants, and had
ascertained definitely that they then resided in the city of New York, and that
their post office address was No. 215 West 125th street, New York City; that
each of them had removed from the state, and had been absent therefrom con-
tinuously for more than six weeks prior to the commencement of said suit.
After alleging that this affidavit is insufficient in five specific particulars,
the bill proceeds with the charge that the affidavit for publication was false

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in fact, in that complainant's address was not then, or at any time, No. 215 West 125th street, New York City, and that Rockwell knew such was not complainant's correct address; that the persons of whom he had inquired for her whereabouts, named in said affidavit, were not her friends, but his own, and that they did not know her address; that Rockwell was, at the time of making said affidavit, and for a long time prior thereto had been, president of the Oregon Art Association, and that complainant was secretary thereof for a long time (though it is not stated she was on this particular date), and that she had frequent communications with members of said club and with Rockwell, and that she had a number of correspondents among the members of said club, with whom Rockwell was well acquainted and from whom he could easily have ascertained her address; that her address was upon the letters and communications aforesaid, and that Rockwell could have ascertained her address therefrom, or from her friends, and could have known that it was not as stated in said affidavit; and that the affidavit was fraudulently made.

It is further averred that, pursuant to said affidavit, an order for service by publication was duly made June 20, 1898, which directed that a copy of the summons and complaint be mailed to complainant at the address aforesaid; that Rockwell caused the same to be deposited in the post office at Portland, Or., June 21, 1898, addressed to her at No. 215 West 125th street, New York City, but that she never received the same; that such further proceedings were had in said suit that a decree of foreclosure was entered September 9, 1898, based upon which a sale was had on October 18, 1898, at which Rockwell became the purchaser at the sum of $2,039.35, which sale was subsequently confirmed by the court on December 8, 1898; that Rockwell took possession of the property, and appropriated the rents and profits up to the 24th day of May, 1902, when, for the consideration of $2,050, he conveyed to the present defendant by a deed of quitclaim.

The bill further alleges that the property has increased in value till it is now worth the sum of $20,000, and was worth $10,000 when sold at execution sale; that complainant's delay in bringing this suit was unintentional, but was occasioned by her living in a distant state and engaging actively in her work there as an artist, and her lack of means to employ counsel and pay the costs of such a suit, and by the further fact that she was ignorant of the sale of the property, and that her first actual notice thereof was acquired subsequent to the year 1902. This suit was commenced June 7, 1907.

There is a demurrer to the bill, specifying, among other objections, laches and want of equity.

Albert H. Tanner, for complainant.
William G. Munly, for defendant.

WOLVERTON, District Judge. Several technical objections are made in the bill to the affidavit filed in the foreclosure proceeding, upon which the order for service by publication was procured. I have given these objections careful attention, and am satisfied that they do not, nor do any of them, render the decree vulnerable. Reference is made by the plaintiff and affiant to the records and files in the case, and the same were thereby made a part of the affidavit for publication. This was tantamount to reading the bill of complaint in the foreclosure proceeding into the affidavit, and renders the same full in every requisite particular. Almost every feature of these technical objections to the service is covered by the cases of Cohen v. Portland Lodge No. 142, B. P. O. E. (C. C.) 144 Fed. 266, and Ranch v. Werley (C. C.) 152 Fed. 509. Further comment is, therefore, unnecessary.

One of the grounds of recovery alleged is that the plaintiff in the foreclosure suit made no election to declare the obligation due and payable, which the mortgage was given to secure, prior to the institution

of such suit. No specific declaration of such an election is necessary,[1] although it is usual to proceed in that way. The commencement of the suit is itself regarded as a sufficient declaration in that respect, and none other is essential.

Nothing is alleged in the bill tending to connect the defendant Stein, the present holder of the legal title to the property in dispute, with the alleged fraud of Rockwell in procuring the foreclosure decree; nor is it claimed that he had any actual notice thereof.

A case of this character must be resolved more or less by the impression it makes upon the conscience of the court. A court of equity is not hampered by the strict rules of the law, and is at liberty to dispose of a cause in consonance with its conceptions of justice, taking into consideration the actions of the parties from the beginning to the end of the dispute, and is bound by the single obligation that the equity it applies shall be legal. Certain equitable principles, familiar to all, are readily suggested when the facts in this case are marshaled— among others, that equity aids the vigilant, not the slothful; that courts of equity are never attracted by the appearance of a stale or inequitable demand, and that, when such an one is presented for their disposition, they remain passive and refuse to be moved by any such considerations, leaving those who seek their aid to such comfort as may be afforded them in a court of law. A party seldom has an absolute right in equity to recover an interest in real property, albeit the effort to do so is made within the period of limitation fixed by the law. If the attempt is made, the case stands or falls according to the special circumstances of the case. A case brought at law for such a recovery within the statutory period must proceed to judgment according to the legal principles which control the ultimate facts involved; but, in equity, the slightest appearance of unfairness or injustice, aggravated by delay, will defeat the guilty party, though the legal period within which the attempt can be made has not elapsed. As said by the Supreme Court of the United States, in Abraham v. Ordway, 158 U. S. 416, 420, 15 Sup. Ct. 894, 39 L. Ed. 1036:

"Whether equity will interfere in cases of this character must depend upon the special circumstances of each case. Sometimes the courts act in obedience to statutes of limitations; sometimes in analogy to them. But it is now well settled that, independently of any limitation prescribed for the guidance of courts of law, equity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and when injustice would be done, in the particular case, by granting the relief asked. It will, in such cases, decline to extricate the plaintiff from the position in which he has inexcusably placed himself, and leave him to such remedies as he may have in a court of law. Wagner v. Baird, 7 How. 234, 238, 12 L. Ed. 681; Harwood v. Railroad Co., 17 Wall. 78, 81, 21 L. Ed. 558; Sullivan v. Portland, etc., Railroad, 94 U. S. 806, 811, 24 L. Ed. 324; Brown v. County of Buena Vista, 94 U. S. 157, 159, 24 L. Ed. 422; Hayward v. National Bank, 96 U. S. 611, 617, 24 L. Ed. 855; Lansdale v. Smith, 106 U. S. 391, 392, 1 Sup. Ct. 350, 27 L. Ed. 219; Speidel v. Henrici, 120 U. S. 377, 387, 7 Sup. Ct. 610, 30 L. Ed. 718; Richards v. Mackall, 124 U. S. 183, 188, 8 Sup. Ct. 437, 31 L. Ed. 396."

To the same effect is Wagner v. Baird, cited in the opinion of the court:

"A court of equity will not give relief against conscience or public convenience where a party has slept upon his rights. 'Nothing' says Lord Cam-

den, 3 Bro. Ch. R. 640, 'can call forth this court into activity but conscience, good faith, and reasonable diligence; when these are wanting, the court is passive and does nothing.' Length of time necessarily obscures all human evidence, and deprives parties of the means of ascertaining the nature of original transactions; it operates by way of presumption in favor of the party in possession. Long acquiescence and laches by parties out of possession are productive of much hardship and injustice to others, and cannot be excused but by showing some actual hindrance or impediment caused by the fraud or concealment of the party in possession, which will appeal to the conscience of the chancellor. The party guilty of such laches, cannot screen his title from the just imputation of staleness merely by the allegation of an imaginary impediment or technical disability."

The principle was also applied in Richards v. Mackall, 124 U. S. 183, 189, 8 Sup. Ct. 137, 441, 31 L. Ed. 396, where the court says:

"We find nothing whatever in the record to excuse the failure of the appellee to institute legal proceedings, in due time, to have the sale set aside. He knew that the appellant relied upon the sale, and upon the faith of it expended large sums. He knew that the premises here in dispute were in fact levied on for his debts, and were intended to be sold in satisfaction of those debts. But after the property has largely increased in value, and after sleeping upon his rights for nearly twelve years, with information, during the whole of that period, of every fact now relied upon by him, appellee asks the aid of a court of equity to set aside the sale and conveyance, and adjudge him to be the owner of the property; and, chiefly, because of a mistake of the officer in not so describing the premises in the advertisement of sale and in the conveyance as to properly identify them. In our judgment, he is not in a position to claim the interference of a court of equity."

As applied to the allegations of this bill, these principles preclude the complainant in the present case. The debt was contracted in March, 1896. Immediately thereafter, complainant and her husband removed from this state, and have remained away ever since. There is no pretense that they paid or offered to pay any part of the sums of money due from them at any time up to the date this bill was filed. For 11 years, from 1896 to 1907, according to the bill, they remained quiescent, and led those who had succeeded to their rights to believe the incident was closed and that they asserted no rights in or to the property. For six years, 1896 to 1902, not a word was said by them to their creditor as to any intention or expectation of paying the debt, and no inquiry apparently was made by plaintiff as to what had been done in the premises, or as to what had become of the property; nor is any peculiar circumstance or misfortune stated that would shut off the avenues of inquiry from the plaintiff. For aught that appears, a letter addressed to any friend in the city of Portland containing an inquiry as to the disposition of the property would have brought notice to the complainant of what had been done. During all this time, she knew that she owed the money borrowed, and it was an unwarranted assumption upon her part to suppose that Rockwell would not take some steps to protect his rights, by foreclosure or otherwise. It is not to be doubted that, in so acting, complainant was sleeping upon her rights. But this is not all. While she is not as specific as she ought to be in the circumstances here in stating the time when she acquired knowledge of the foreclosure, she does say that she knew it "subsequent to the year 1902." This in itself is evasive. Candor obliges her to be more specific. This statement must be taken most strongly

against her, and the beginning of her notice put at the commencement of 1902. From that date until 1907—five years—she further delayed, and she gives no sufficient excuse therefor, saying only that she was a nonresident, and had not the means to employ counsel. If nonresidence was an impediment to her, she still has it to cope with, for the bill in this case was verified by her at the city of New York. Such an excuse is of no avail. Meanwhile, by her own admissions, the property has advanced from an inconsiderable value in 1896 or 1898, till it is now worth $20,000. It is too clear for argument that she has waited upon its advance before seeking its recovery, in the meantime leading the defendant to believe in the repose of his title and possession. This is an act that a court of equity will not tolerate, and the suit, I am impressed, is therefore barred by complainant's laches.

For the reasons assigned, the demurrer will be sustained.