**NAGY v. L. MUNDET & SON, Inc., et al.**
**No. 184.**

Circuit Court of Appeals, Second Circuit.
Jan. 9, 1939.

Gustave R. Thompson, of New York City, for appellant.

Duell & Kane and David S. Kane, all of New York City, for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a decree, dismissing a bill in equity for the infringement of Patent No. 1580670 issued to Berthold Nagy on April 13, 1926. The patent was for certain improvements in the delivery mechanism of machines—known as "assembly wheels"—which put together metal caps and cork discs by means of a rotating set of plungers that press the cork discs into the metal caps and usually fix them in place by an adhesive. The wheel ejects the finished caps upon a moving belt where they may be cooled and examined for defectives which are picked off: the invention concerns this feature alone. It will probably be clearer to explain Nagy's contribution to the art by comparison with McManus's which the judge thought, and we think, invalidated the patent based upon it. McManus disclosed a fast moving belt which received the finished caps directly from the assembly wheel, moving them along in single file, until they were dropped upon a second belt moving at the same speed, but at an angle of ninety degrees to the first. When six or eight caps had fallen upon the second belt, the row so formed was wiped off by the fan of a wheel onto a third belt, wider than the other two and moving at ninety degrees to the second belt, and more slowly. The second change of direction resulted in the third belt's moving in the same direction as the first. Row after row of caps were thus deposited upon the third belt, where, because of its slow speed, they could be inspected and any defective ones removed. In McManus's machine the assembly wheel was separated from the inspection belt by the whole length—about five feet—of the cooling belt, and that made it difficult, if not impossible, for a single operative at once to tend the wheel and to inspect the finished caps. Nagy's machine brought the inspection belt near enough to the wheel for one operative to tend both: that was his only contribution, and he did so by ejecting the finished caps directly upon McManus's second belt: in other words by eliminating McManus's first, or cooling, belt altogether, so putting the inspection belt under the eye of the operative at the wheel.

It is true that McManus, after devising his machine, kept on using it for some four years before Nagy filed his application; and he must have done so, either because the economy of dispensing with one operative did not seem to him worth the trouble of reorganizing his machine, or because he did not think out how to do it. His immediate acceptance of the change when he saw Nagy's machine seems a complete answer to the first possibility; and it must be confessed that it is hard to resist the conclusion that, at least in that establishment, imagination had been sluggish. We are disposed nevertheless to put the advance among those changes that would certainly have come about with the continued use of the McManus machine. It is not safe to assume, because a single manufacturer for a few years has not discovered an improvement, that it was beyond the powers of rather commonplace talent; like most people he may have been content to let things stand, if his business was otherwise satisfactory; and that may be true, even when he accepts the change after it is brought to his notice. The case is much stronger for an invention when it appears at the end of a period of active competition among several manufacturers; though even then four years is not a very long time upon which to base any inference. In the case at bar we have no account of the art as a whole which tells us under what conditions Mc-

Manus worked, or what was the pressure of competition upon him to cut down his wage account. But we are entitled to assume that, if once it occurred to him, or anyone else who used his machine, that it was important to get rid of the girl at the inspection belt, it could not have taken much inventiveness to do so by bringing the belt within the observation of the operative who tended the assembly wheel. Left as we are to speculation, we agree with the judge that the advance does not justify a monopoly. The added feature of an intermittent wiper, which the defendant used for a short season, is plainly of no consequence.

Decree affirmed.